## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

**ANGELA SCHUNCEY RICHARDSON**                                    **PLAINTIFF**
**ADC #712575**

**v.**                              **No: 4:22-cv-00160-LPR-PSH**

**JOHN HERRINGTON**                                              **DEFENDANT**

## PROPOSED FINDINGS AND RECOMMENDATION

## INSTRUCTIONS

The following Recommendation has been sent to United States District Judge
Lee P. Rudofsky. You may file written objections to all or part of this
Recommendation.  If you do so, those objections must: (1) specifically explain the
factual and/or legal basis for your objection, and (2) be received by the Clerk of this
Court within fourteen (14) days of this Recommendation.  By not objecting, you
may waive the right to appeal questions of fact.

## DISPOSITION

### I.  Introduction

Before the Court is a motion for summary judgment, brief in support, and
statement of undisputed material facts filed by defendant Deputy Warden John
Herrington (Doc. Nos. 57-59).  The subject of this motion is the only remaining

claim in this case – a claim that Herrington retaliated against plaintiff Angela Shuncey Richardson, an inmate at the Arkansas Division of Corrections' McPherson Unit, after Richardson filed a grievance against him on December 10, 2019. Richardson claims that in retaliation for the filing of the grievance, Herrington wrote a false disciplinary against her on December 18, 2019.  Richardson has filed a response to the motion (Doc. No. 61) and a response to Herrington's statement of facts (Doc. No. 62).  For the reasons described herein, the undersigned recommends that Herrington's motion for summary judgment be granted.

## II. Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986).  When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party.  *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002).  The nonmoving party may not rely on allegations or denials, but instead must demonstrate the existence of specific facts that create a genuine issue for trial.  *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007).  The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy.  *Id.* (citations

omitted).  An assertion that a fact cannot be disputed or is genuinely disputed must be supported by materials in the record such as "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . .".  FED. R. CIV. P. 56(c)(1)(A).  A party may also show that a fact is disputed or undisputed by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(B).  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case.  *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012).  Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment.  *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

## III.  Facts

**The Grievance.**

Richardson filed a grievance against Herrington on December 10, 2019 related to an incident that took place two days earlier.  In the grievance, number MCP19-01358, Richardson complains about an incident that took place on

December 8, 2019 involving non-parties Chaplain Lang and inmate A. Williams.[1]

She claims that Williams masturbated onto a chapstick and gave it to her, telling her

to apply it to her lips.  Richardson states that Chaplain Lang, purportedly made aware

of Williams' behavior, failed to report Williams' behavior. As a result, she spoke to

Herrington "in regards to Chaplin Lang untruthfulness and failed to report her/clerk

mentor … Williams…."  Richardson essentially grieves that Herrington ignored her

report and failed to take any action. *See* Doc. No.  28 at 16; *Richardson Deposition*

at 5:20-25 – 6:1-16.  The warden responded to this grievance on January 13, 2020,

stating that a thorough investigation of the grievance uncovered no evidence to

support Richardson's claims.  On January 23, 2020, the deputy director concurred

with the warden's decision, found the claim without merit, and denied the appeal.

Doc. No. 28 at 16.

### The Disciplinary.

On December 18, 2019, eight days after Richardson filed her grievance

against Herrington, Herrington wrote a disciplinary charging her with lying to a staff

member, including omissions and providing misinformation, in violation of code 13-

---

[1] Richardson and Williams were involved with the PAL (Principal Applications of Life) faith-based program at McPherson, Williams as a mentor.  Doc. No. 57-3 at 8:13-17, 11:12-12:15. Chaplain Lang was involved in leading the program.  Richardson alleges that Williams was Lang's assistant. Richardson claims that she and Williams were in a relationship, and she also believed that Williams and Lang were having an inappropriate relationship. Doc. No. 57-3 at 5:11-18, 11:3-11.

2. The disciplinary was unrelated to the December 8, 2019 incident Richardson grieved about in MCP19-01358, but involved the same players. The incident giving rise to the disciplinary arose from an investigation that began on November 7, 2019. On that date, Chaplain Lang, by email, reported to Linda Louis that Richardson told her she kissed inmate Williams in Williams' room "on a Sunday morning." Chaplain Lang's report stated that Richardson did not provide a date that this allegedly took place. Doc. No. 57-1, *PREA Incident Packet*, at 9. Louis forwarded the email to PREA investigator Qushawana Stinnett, stating "I just checked my email. Get this investigated. Thanks." *Id.* Lt. Stinnett commenced a PREA (Prison Rape Elimination Act) investigation, and it appears that the investigation centered on the alleged sexual misconduct having taken place on November 3, 2019, the Sunday before Richardson reported the incident.[2]

### a.  PREA Investigation

Richardson was interviewed during the investigation and wrote a statement saying, "No comment. I was not in the kissing on Sunday 11/3/2019 kissing [Williams]. View camera footage." Doc. No. 57-1 at 11; *Richardson Deposition* at 10:1-12. Despite being questioned about her reported contact with Williams on

---

[2] Lang's report that the incident happened on "a Sunday" was apparently interpreted to mean that the incident took place on "the Sunday" prior to the incident and not on an unknown Sunday. November 3 was the Sunday before November 7, 2019. Despite Richardson's speculation, there is no evidence before the Court that Herrington was initially responsible for making that determination. See Doc. No. 57-3 at 11.

November 3, Richardson appeared to deny that the incident took place. She did not clarify that it took place as she had reported, but on a different date, nor did she provide an alternative date on which this activity allegedly occurred during the investigation. Richardson claims she reported to Lang that the incident took place in August. Doc. No. 57-3 at 13. Lang's email does not include that information.

As part of the PREA investigation, Williams also gave a statement. She denied any sexual contact with Richardson, reporting that Richardson had threatened "to take me down" and to "report PREA on me and her or me and Chaplin Lang." Doc. No. 57-1 at 3. Williams stated she began to distance herself from Richardson after Richardson reported a PREA incident against another inmate involved in the PAL program. Williams claimed that her "distancing herself" from Richardson upset Richardson, leading to several arguments and Richardson's threats against her. She stated that the day after Richardson threatened to take her down, Richardson reported the alleged sexual contact with Williams to Lang, which resulted in the PREA investigation. *Id.* at 3-4.

The PREA investigation also included a video review for the date of November 3, 2019, between 8:00 AM to 3:00 PM. No sexual activity between Richardson and Williams was observed. Doc. No. 57-1 at 8. PREA investigator Lt. Stinnett found insufficient evidence of sexual misconduct based on witness statements and review of camera footage. *Id.* at 3-4. The PREA reports document

the names of the investigators. *See* Doc. No. 57-1 at 1-11. Herrington is not identified as one of them. The findings of the PREA investigation were, however, reported to Herrington for further review. *Id.* at 4 ("I Lt Qushawana Stinnett am referring this Investigation to John Herrington for further review.")

On November 18, 2019, Herrington received the PREA investigation report and reported and forwarded the findings to Warden Bradley. *Id.* at 2. He requested an Internal Affairs review. *Id.* at 2. He also stated "I do believe that inmate A. Richardson 712575 told Chaplain Lang the story of kissing inmate Williams in order to get inmate Williams involved in a PREA incident to get her fired from her mentor position." *Id.* On that same day, Warden Bradley ordered an investigation from Internal Affairs. *Id.* at 1.

### b. Internal Affairs Investigation

Internal Affairs Investigator Susan Townsend conducted the IA investigation. She documented that Herrington referred the incident to IA on December 9, 2019. Doc. No. 57-2 at 5. In her report to IA Administrator Raymond Naylor on December 12, 2019, Townsend stated that a staff member received information that Richardson reported she had kissed Williams and signed out of the PALS program; and that Lt. Stinnett conducted a PREA investigation, which included reviewing camera footage and interviewing inmates, and found no evidence to support that Richardson kissed Williams. In her findings, Townsend stated:

> I find this incident does not meet the criteria for PREA. Inmate Richardson made an allegation that she kissed inmate Williams. During the unit investigation she wrote in her statement, no comment and then stated she did not kiss inmate Williams. Staff reviewed video and found no evidence to support that inmate Richardson kissed inmate Williams. I concur with Lieutenant Stinnett that there is no evidence to support inmate Richardson kissed inmate Williams.

*Id.* at 5-6. IA Administrator Naylor forwarded the IA report to Warden Bradley on December 12, 2019.  Four days later, Bradley found Richardson's claim to be unfounded and documented that "[d]isciplinary action to be taken against Inmate Richardson for lying to staff." *Id.* at 3. There is no evidence before the Court that Herrington had any involvement in the IA investigation.

### c. The Disciplinary charge and hearing

On December 18, 2019, after Warden Bradley directed disciplinary action to be taken against Richardson, Herrington issued a disciplinary charging her with lying to a staff member, including omissions and providing misinformation. *Id.* at 7.

During her disciplinary hearing on December 27, 2019, Richardson testified as follows: "I signed out of PAL in November. We did kiss on 8/25/19 and not on 11/03/19. I gave her the month. I was not trying to get her fired."  Doc. No. 28 at 21. Richardson was found guilty at the disciplinary hearing by Hearing Officer Terrie Banister.  *Id.* This was the first time that Richardson explained that she did kiss Williams but on a different date than the one investigated. In her deposition,

Richardson stated that Herrington was not present during her disciplinary hearing. Doc. No. 57-3 at 16.

On January 17, 2020, Richardson's disciplinary conviction was overturned by Warden Bradley. Doc. No. 2 at 37. The reason stated for the reversal was: "New information has been obtained." *Id.*; *Richardson Deposition* at 17:1-10. Neither Richardson nor Herrington know why the disciplinary was overturned. *See Richardson Deposition* at 23-24; *Herrington Declaration* at 2.

In his declaration, Herrington asserts he did not file a false disciplinary; he was working from the best information available at the time it was issued, as gathered during the investigations; and that if the kiss happened on another date, Richardson should not have withheld that information from investigators. Doc. No. 58-4 at 2. He also denies issuing the disciplinary in retaliation for the grievance Richardson filed against him. *Id.* at 3.

## IV. Analysis

Herrington asserts that he is entitled to qualified immunity with respect to Richardson's claim. Qualified immunity protects government officials from liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person [in their positions] would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity is a question of law and is appropriately resolved on summary judgment. *McClendon v.*

*Story County Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  To determine whether a defendant is entitled to qualified immunity, the Court must consider two questions: (1) do the facts alleged by plaintiff establish a violation of a constitutional or statutory right; and (2) if so, was that right clearly established at the time of the defendant's alleged misconduct.  *Wright v. United States*, 813 F.3d 689, 695 (8th Cir. 2015).  Courts may exercise "their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

To succeed on a § 1983 retaliation claim, a plaintiff must prove: (1) that she engaged in a protected activity; (2) that the government official took adverse action against her that would chill a person of ordinary firmness from continuing the activity; and (3) that the adverse action was motivated at least in part by the exercise of the protected activity.  *See Gonzalez v. Bendt*, 971 F.3d 742, 745 (8th Cir. 2020); *Spencer v. Jackson Cnty.*, 738 F.3d 907, 911 (8th Cir. 2013).  Speculative and conclusory, or *de minimis* allegations cannot support a retaliation claim.  *See Atkinson v. Bohn*, 91 F.3d 1127, 1129 (8th Cir. 1996) (per curiam).

A plaintiff must prove a causal connection between the constitutionally protected activity and the adverse action.  *Revels v. Vincenz,* 382 F.3d 870, 876 (8th Cir. 2004).  Temporal proximity between a protected activity and an adverse action

"is relevant but not dispositive." *Wilson v. Northcutt*, 441 F.3d 586, 592 (8th Cir. 2006) (citing *Kiel v. Select Artificials, Inc.,* 169 F.3d 1131, 1136 (8th Cir. 1999)). To succeed on a retaliation claim, a plaintiff must provide affirmative evidence of a retaliatory motive. *See Haynes v. Stephenson,* 588 F.3d 1152, 1157 (8th Cir. 2009); *see also Wilson*, 441 F.3d at 592 ("[Plaintiff's] belief that [defendant] acted from a retaliatory motive is insufficient.").

Here, it is undisputed that Richardson engaged in a protected activity by filing a grievance on December 10, 2019. [3] It is also undisputed that Herrington initiated a disciplinary on December 18, 2019 at the direction of Warden Bradley that resulted in adverse action against Richardson, although that disciplinary was overturned 21 days later.[4] So the question before the Court is whether there is a causal connection between Richardson's filing of a grievance against Herrington on December 10, 2019 and Herrington's issuance of a disciplinary on December 18, 2019. And what affirmative evidence of a retaliatory motive has Richardson offered in her response to the summary judgment motion? For the reasons set forth below, the Court finds

---

[3] Retaliation for the use of a prison grievance procedure is actionable. *See Orebaugh v. Caspari*, 910 F.2d 526, 528 (8th Cir. 1990) (per curiam) (otherwise proper acts are actionable under § 1983 if done in retaliation for grievances filed under established prison grievance procedure).

[4] The Court does not address whether the adverse action would chill a person of ordinary firmness from continuing the activity, because it finds no causal connection between the filing of the grievance and issuance of disciplinary.

that Richardson has failed to establish evidence of a retaliatory motive or a causal connection between the filing of the grievance and the disciplinary.

The Court first notes that the eight days between the filing of the grievance and the issuance of the disciplinary establishes temporal proximity. And while this is relevant, it is not dispositive, and is only considered as one of a number of facts that the Court has considered in this recommendation.

As evidence of Herrington's retaliatory motive, Richardson points to her belief that Herrington "created a date to make plaintiff to look as if she lied" during the PREA investigation. Doc. No. 62 at 3. As a reminder, the PREA investigation began on November 7, 2019, when Richardson reported to Lang that she kissed Williams on a Sunday. Richardson asserts that she did not know the date of the alleged kiss with Williams when she reported to Lang on November 7 that she had kissed Williams, and if she had known the date, she would have reported it to the PREA investigators. *Id.* It is clear that the PREA investigators believed Richardson's email to Lang indicated the kiss happened on the Sunday before she reported it, as opposed to some unknown Sunday. And in Richardson's PREA interview, she denied the kiss and did not clarify that there was actually a kiss but it did not occur on November 3. Thus, the PREA investigation focused on whether Richardson actually kissed Williams on November 3, 2019, the Sunday before she reported the kiss to Lang. Despite Richardson's allegations, there is no evidence that Herrington

was responsible for "making up" the date that the alleged kiss took place in an effort to make her look like a liar so she could later be disciplined. And there is no evidence of record documenting that Herrington was involved in the PREA investigation.

In addition, Richardson's claim that Herrington made up the date of the alleged kiss fails to establish a retaliatory motive for another reason. The PREA investigation finding Richardson's claim of improper sexual contact unfounded was completed November 18, 2019.  Herrington was notified of the PREA finding on that date, and concluded that Richardson had lied in making the sexual misconduct claim. Assuming Herrington "made up" the date of the alleged sexual contact as part of the PREA investigation, he would have done so between November 7, when the contact was reported, and November 18, when the PREA investigation concluded. And his actions would have been taken **before** Richardson filed the December 8 grievance against him. Thus, Herrington could not have made up the date of the alleged sexual contact to influence the PREA investigation with a retaliatory motive because Richardson's grievance had not yet been filed. Richardson has therefore not established any causal connection between Herrington's alleged efforts to influence the PREA investigation that resulted in the disciplinary and her December 8

grievance, and her retaliation claim fails for that reason. *See Haynes v. Stephenson,* 588 F.3d at 1157.[5]

Richardson also claims that Herrington had knowledge on or around November 8, 2019 that Williams had confessed to kissing Richardson during a PAL class. Doc. No. 62 at 4. She suggests that even though Herrington knew that her report of sexual contact was true because of this, he still took action to influence the PREA investigation to make it appear that she provided a false claim. First, Richardson offers no evidence to support this claim. Second, even if Herrington took such action, it happened before Richardson filed her grievance against him and therefore could not have been taken to retaliate against her for filing the grievance.

Richardson also offers as evidence of retaliatory motive a claim that Herrington said "I got you" to her after she filed her grievance. Doc. No. 62 at 4. Even assuming this is true, it does not change the Court's analysis that the actions Richardson claims were retaliatory took place before her grievance was filed.

---

[5] *See also Davidson & Assocs. v. Jung*, 422 F.3d 630, 638 (8th Cir.2005) ("A plaintiff may not merely point to unsupported self-serving allegations, but must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor.").

In addition, Richardson's retaliatory discipline claim fails, as a matter of law, if there is "some evidence the inmate actually committed a rule violation." *Hartsfield v. Nichols*, 511 F.3d 826, 829 (8th Cir. 2008).  United States Magistrate Judge Joe Volpe has explained:

> Importantly, a "report from a correctional officer, even if disputed by the inmate and supported by no other evidence, legally suffices as some evidence upon which to base a prison disciplinary violation, if the violation is found by an impartial decision maker." *[Hartsfield v. Nichols]* . . . In other words, a disciplinary decision made by an impartial decision maker and supported by some evidence "essentially checkmates" a retaliation claim. *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994); *see also Sanders* [*v. Hobbs*], 773 F.3d [186] at 190 [8th Cir. 2014].

*Brown'el v. White Cnty. Sheriff's Dep't,* No. 4:24-CV-00081-LPR-JJV, 2024 WL 3352928, at *2 (E.D. Ark. Apr. 4, 2024), *report and recommendation adopted*, No. 4:24-CV-00081-LPR-JJV, 2024 WL 3345499 (E.D. Ark. July 9, 2024).

In this case, Herrington did not make the final decision to discipline Richardson for her report about kissing Williams.  Rather, Warden Bradley found that disciplinary action was warranted following the PREA investigation and the Internal Affairs review, both of which were ordered by Bradley. *See* Doc. No. 57-1 at 3.  The PREA investigator, Lt. Stinnett, found no evidence to support Richardson's claim of sexual contact. The IA reviewer, Townsend, found the same. Those findings were based in part on Williams' denial of any sexual contact, and on Richardson's denial of such contact on November 3, 2019 and decision not to clarify

to the investigators that the alleged contact happened on a different date. Richardson's disciplinary hearing was the first time she claimed that the contact took place on a different date. And after hearing Richardson's testimony and considering the findings of the PREA and IA investigations which included the statement of Williams denying any contact, the disciplinary officer found Richardson guilty. Doc. No. 28 at 21. Even though her disciplinary conviction was later reversed, an impartial factfinder found there was some evidence to support the charge when it was brought.[6] And the Court concurs that there was some evidence to support the finding.

## V.  Conclusion

For the reasons stated herein, the undersigned recommends that Herrington's motion for summary judgment (Doc. No. 57) be granted and Richardson's claims be dismissed with prejudice. There was no constitutional violation, and Herrington is entitled to qualified immunity.

DATED this 2nd day of September, 2025.

_____
UNITED STATES MAGISTRATE JUDGE

---

[6] *See Moots v. Lombardi,* 453 F.3d 1020, 1023 (8th Cir. 2006) ("The fact that the conduct violation was later expunged does not mean that there was not some evidence for its imposition."); *see also Robinson v. King*, No. 4:05CV702-DJS, 2006 WL 1026882, at *4 (E.D. Mo. Apr. 18, 2006) (holding that some evidence of plaintiff's violations negated his retaliation claim and noting that those violations were dismissed nine days later).